CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 27 2018

JULIA C. DUDLEY, CLERK
BY: /s/ H. McCrae
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **RANDY BURKE,** ) | Civil Action No. 7:16-cv-00365 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| **HAROLD CLARKE, et al.,** ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Randy Burke, a Virginia inmate proceeding pro se and as a pauper under 28 U.S.C. § 1915, filed a verified complaint pursuant to 42 U.S.C. §§ 1983 and 2000cc-1. Plaintiff names numerous staff of the Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison ("WRSP") as defendants. Plaintiff argues that Defendants violated the First and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Virginia law by not providing Rastafarian group religious services; Rastafarian religious items and holiday meals; legal resources; and educational and vocational programming. Defendants filed a motion for summary judgment, arguing, inter alia, the defense of qualified immunity.[1] Plaintiff responded, making this matter ripe for disposition.[2] After reviewing the record, I grant in part and deny in part Defendants' motion for summary judgment and direct Defendants to file another motion for summary judgment.

---

[1] I defer ruling on any claim based on state law to first consider the defense of qualified immunity. See, e.g., Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir. 1996) (applying doctrine of qualified immunity only to federal § 1983 claim and not addressing state law claims).

[2] The Clerk docketed a document filed by a non-party who may not file documents on Plaintiff's behalf. See 28 U.S.C. § 1654 (noting only parties or parties' attorneys may plead and conduct their own cases in federal courts). Accordingly, the document (ECF No. 38) is stricken from the public docket and is not considered.

# I.
## A.

Plaintiff presents five broad claims about the conditions of confinement he experienced at Red Onion State Prison ("ROSP") and WRSP. First, various defendants violated religious rights protected by the First Amendment and RLUIPA because he was denied access to Rastafarian religious group services, service items, and holiday meals. Second, various defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff differently than other inmates. Plaintiff describes the disparate treatment as access to vocational and educational programs and the religious practices described in the first claim. Third, various defendants violated the Due Process Clause of the Fourteenth Amendment by not giving Plaintiff access to vocational and educational programs. Fourth, various defendants violated a First Amendment right to access courts by not supplying legal resources for the United States Virgin Islands ("USVI") laws. Lastly, various supervisory defendants witnessed or learned of these violations but did not intervene. Plaintiff seeks declaratory relief, a transfer to the custody of the USVI, and nominal, compensatory, and punitive damages.

## B.

Plaintiff is from the USVI and is an observant Rastafarian who believes he must grow his hair uncut and styled in dreadlocks. Plaintiff was transferred from the USVI and into the custody of the VDOC at ROSP on April 14, 2013, pursuant to the Correctional Services Contract ("Contract") between the VDOC and the USVI Bureau of Corrections ("BOC").

On May 7, 2013, Plaintiff received an institutional conviction and was confined in segregation for refusing to obey the order to cut his dreadlocks. VDOC Operating Procedure ("OP") 864.1, titled, "Offender Grooming and Hygiene," and effective on April 1, 2013,

establishes uniform personal grooming standards for inmates in VDOC facilities. Prison officials explain that these standards facilitate the identification of inmates and promote safety, security, and sanitation. Dreadlocks and other hair styles are prohibited for general population inmates because those styles could conceal contraband, promote identification with gangs, create a health, hygiene, or sanitation hazard, or could significantly compromise the ability to identify an inmate.

Plaintiff was at ROSP while he was still challenging his criminal judgment entered by a court of the USVI. On December 6, 2013, the USVI Supreme Court denied Plaintiff's appeal. Plaintiff alleges that he lost the appeal because he had been unable to obtain USVI legal materials since arriving at ROSP.

Plaintiff was transferred to WRSP on May 30, 2014, and placed in segregation for nearly four weeks. Upon arrival, he tried to obtain USVI legal resources to develop a habeas petition, but none were available.

Plaintiff was released from segregation and assigned to WRSP's Grooming Standards Violators Housing Unit ("VHU") on June 26, 2014. The VDOC established the VHU for inmates who have a religious objection to cutting their dreadlocks. The objective of the VHU pod is to manage male inmates who are in violation of the grooming standards under OP 864.1. To be eligible for assignment to VHU at WRSP, an inmate must have been convicted of offense code 133, "Refusing to Comply with the Department's Grooming Standards."

Before being housed in the VHU, an Institutional Classification Authority hearing was held on an unspecified date to inform Plaintiff of the rules, rights, and privileges afforded inside the VHU. Plaintiff was told that he could practice his religious faith inside of his cell because, at

3

that time, group religious services were not available to Rastafarians in the VHU. Plaintiff was also told of the educational and vocational programs offered in the VHU. Plaintiff was further told that he could not be housed with or be near inmates in the general population except for the school tutor. Nonetheless, all inmates in the VHU may enroll in the distance learning programs, which include viewing instructional video lessons via closed-circuit TV and sending and receiving assignments to teachers via institutional mail.

In January 2015, the VDOC allowed group Rastafarian religious services for the VHU inmates who signed up. Plaintiff attended the service on January 15, 2015, but the prison had not provided a "Levi and high priest" or Rastafarian service items like a red, yellow, and green prayer rug; a red, yellow, and green knit hat; drums; a "Holy Piby Bible"; incense; a red, yellow, and green Lion of Judah flag; or pictures, portraits, or documents of King Haile Selassie I.

On February 18, 2016, Plaintiff was moved into Phase I of the VHU, which purportedly had been created two days earlier. Plaintiff requested educational or vocational programming for job training but was denied a job outside the VHU because his hair was deemed a security threat.

On April 28, 2016, Plaintiff filed an informal complaint about not receiving from the prison law library legal materials about USVI laws. Defendant Jones, who was the WRSP Law Library Supervisor, replied approximately two weeks after the informal complaint that the USVI had not yet transmitted an updated, working electronic collection of USVI laws.

Pursuant to the Contract, the USVI BOC is responsible for establishing procedures to make all necessary legal research materials about USVI laws available to the USVI inmates in the VDOC's custody. The USVI BOC typically sends a compact disc ("CD") of USVI laws to

WRSP.³ The CD arrived at WRSP on February 2, 2015, and stopped working in March 2016, ostensibly because the software license expired. WRSP staff requested an updated CD in March 2016, but WRSP staff did not receive the updated CD until June 22, 2016.⁴

In response to another informal complaint sent on April 28, 2016, defendant Collins, who was the Unit Manager, explained on May 6, 2016, that Plaintiff could participate in Rastafarian services by writing the Chaplain during open enrollment and could enroll in long-distance education programs. In the subsequent regular grievance, Plaintiff alleged that he had already been on the participation list from the prior year but still had not been allowed to participate.

Defendants explain that a one-hour Rastafarian service occurs in the VHU each Friday morning. They further assert that Plaintiff does not attend because he has not submitted a request to participate despite being told to do so, not because he is personally prohibited from attending.

On May 5, 2016, Plaintiff filed an informal complaint to the Chaplain, wanting Rastafarian service items and Rastafarian holiday meals on July 23 and November 2. The Chaplain replied on May 12, 2016, noting that he does not have any of the requested items and that all religious items must be donated. Plaintiff later learned that prison officials do not serve holiday meals to Rastafarians even though Muslim inmates may receive Islamic holiday meals and various religious items like Kufis.

---

³ I do not recite Plaintiff's dissatisfaction with any alleged act or omission by a USVI official who is not a party to this action.

⁴ In addition to the CD and bound references, the law library also has a computer with access to Westlaw, which provides USVI forms and rules. Additionally, WRSP inmates also have access to a court-appointed institutional attorney who is available to provide them legal assistance.

5

Plaintiff filed regular grievances after these informal complaints. Defendants Ravizee, who was the WRSP Grievance Coordinator, rejected the grievances at intake, and defendant Bivens, who was the VDOC Regional Ombudsman, upheld the determinations on appeal.

## II.

Plaintiff complains about events occurring before August 1, 2014, but Plaintiff did not commence this action until August 1, 2016. A plaintiff pursuing claims via § 1983 for events arising in Virginia must do so within two years from the time when the claim accrues. See Owens v. Okure, 488 U.S. 235, 239-40 (1989); Va. Code § 8.01-243(a). A federal cause of action accrues when "the plaintiff has a complete and present cause of action" or when the plaintiff "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (internal quotation marks omitted).

Plaintiff could have pursued claims about the conditions he experienced via § 1983 accruing before August 1, 2014. Plaintiff is proceeding as a pauper, and this defense is apparent from the complaint. See, e.g., Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006) (recognizing a court may raise the statute of limitations defense sua sponte for a litigant proceeding under 28 U.S.C. § 1915). Accordingly, the statute of limitations bars § 1983 claims accruing before August 1, 2014.[5]

## III.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). "Material facts" are those facts necessary to establish the elements of a party's cause of

---

[5] A plaintiff bringing a claim via RLUIPA must do so within four years from the time when the claim accrues. 28 U.S.C. § 1658; Jones v. R. R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004). Plaintiff was transferred to the VDOC within four years of commencing this action.

6

action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

### A.

Defendants are entitled to summary judgment as to damages sought for the RLUIPA claims and official capacity claims. RLUIPA does not authorize damages against a public official. See Sossamon v. Texas, 563 U.S. 277, 282 n.1, 293 (2011) (prohibiting damages claims against state officials in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir.

2009) (same for individual capacity); see also Washington v. Gonyea, 731 F.3d 143, 146 (2d Cir. 2013) (discussing the construction of RLUIPA). Also, the Commonwealth of Virginia has not waived its sovereign immunity to § 1983 damages actions. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff cannot recover damages against Defendants in their official capacities or via RLUIPA.

## B.

Defendants are entitled to qualified immunity and summary judgment to the extent Plaintiff argues he has a federal right to educational or vocational programs. See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (finding that inmates do not have a constitutional right to access educational or rehabilitative programs); Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988) (state has no constitutional obligation to provide basic educational or vocational training programs to prisoners). The record establishes that the VDOC does offer some programming, and Plaintiff's dissatisfaction with the breadth or depth of the programming does not describe a violation of clearly established federal law. Accordingly, Defendants are entitled to qualified immunity and summary judgment for this claim.

## C.

Defendants are entitled to qualified immunity and summary judgment for the procedural due process claims. Plaintiff argues that he has a clearly-established federal due process right to avoid the conditions of confinement in the VHU. He also argues that he has a protected property interest under 5 V.I. Code § 4503(c) for access to vocational programs while at a VDOC prison.[6]

---

[6] That provision reads in pertinent part:
   The Director of Corrections is authorized to enter into agreements to use the correctional or detention facilities of ... any state ... government ... in the United States ... which are accredited by the American Correctional Association ... provided that as a condition of and

8

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). More specifically, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life," id. at 252, or "will inevitably affect the duration" of his confinement, Sandin v. Conner, 515 U.S. 472, 487 (1995). "[W]hen a state policy expressly and unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." Prieto, 780 F.3d at 252.

Plaintiff's description of the segregation-like conditions does not exceed a sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. Furthermore, Plaintiff fails to demonstrate that state prison regulations or procedures created a liberty interest or the described conditions constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Barksdale v. Clarke, Civil Action No. 7:16-cv-00355, 2017 U.S. Dist. LEXIS 123518, at *20, 2017 WL 3381370, at *6 (W.D. Va. Aug. 4, 2017) (discussing restrictive conditions). Moreover, the record establishes that WRSP offers "educational and/or vocation programs" that allow WRSP inmates, like Plaintiff, to gain marketable skills. Indeed, Plaintiff has worked on G.E.D. level programs, improving his marketability for employment upon any release from incarceration. See 5 V.I.C. § 4503(c)

---

prior to the transfer of any inmates, the Director of Corrections shall ascertain and insure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s).

5 V.I.C. § 4503(c).

(noting the desire for marketable skills). Accordingly, Defendants are entitled to qualified immunity and summary judgment for the procedural due process claims.[7]

**D.**

To the extent any part of the access to courts claim is not time barred, Defendants are entitled to qualified immunity and summary judgment. Inmates have a constitutional right to reasonable access to courts to challenge their convictions or vindicate their constitutional rights. Bounds v. Smith, 430 U.S. 817, 838 (1977). However, "Bounds did not create an abstract, freestanding right to a law library or legal assistance"; these options are means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds, 430 at 825). Thus, Bounds does not require a particular method to ensure reasonable access to courts but requires only a state-provided capability to bring an action related to a criminal appeal, collateral attack, or a civil rights violation. Id. at 356; see Fawley v. Johnson, 2011 U.S. Dist. LEXIS 82784, at *14-17, 40, 2011 WL 3240537, at *5, 11-13 (W.D. Va., July 28, 2011) (noting no constitutional deprivation from prison policy requiring inmates to request legal materials via citation), aff'd, 466 F. App'x 187 (4th Cir. 2012).

The right of reasonable access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Accordingly, in order to plead a backward looking denial of reasonable access to courts claim, a plaintiff must specifically identify a non-frivolous legal

---

[7] Also, Plaintiff cannot succeed on a claim that he has a federal right to access state grievance procedures. See, e.g., Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

10

claim that a defendant's actions prevented him from litigating. Id. at 415-16; Lewis, 518 U.S. at 353 n.3.

Plaintiff says his "meritorious" appeal and habeas claims are "lack of fingerprints" and that he was "convicted off of speculation instead of solid facts." Plaintiff fails to explain how fingerprints are a determinative element of the unidentified crime(s) for which he is incarcerated, and his "speculation" claim is too conclusory. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff cannot rely on just "vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions. . . . The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." Godfrey v. Washington Cnty., Va., Sheriff, No. 7:06-cv-00187, 2007 U.S. Dist. LEXIS 60519, at *39, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007) (Turk, J.) (citing Lewis, 518 U.S. at 351). Also, Plaintiff does not describe how any defendant intentionally prevented him from accessing the institutional attorney. Accordingly, Defendants are entitled to qualified immunity and summary judgment for these claims.

### E.

Defendants' motion for summary judgment must be denied in part for the religion claims. An inmate's right to religious exercise must be balanced with a prison's institutional needs of security, discipline, and general administration. Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). RLUIPA affords heightened protection to a prisoner's religious exercise, whereas the First Amendment's Free Exercise Clause is more deferential to prison official's decisions impacting religious exercise.

11

RLUIPA prohibits government officials from imposing a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). "The least-restrictive-means standard . . . requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." Jehovah v. Clarke, 798 F.3d 169, 177 (4th Cir. 2015) (quoting Holt v. Hobbs, 135 S. Ct. 853, 864 (2015)).

In contrast, a correctional regulation or management decision that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner v. Safley, 482 U.S. 78, 89-92 (1987)); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis).

A "substantial burden" is defined similarly for both the First Amendment and RLUIPA. These federal protections are implicated if a burden "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following

12

the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[8] Lovelace, 472 F.3d at 187; see, e.g., Patel v. Bureau of Prisons, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause . . . and RLUIPA.").

Plaintiff describes a substantial burden on his religious exercise. Plaintiff explains that his personal religious beliefs require him to meet, discuss, and practice his religion in a group with other Rastafarians and in a location adorned with religious paraphernalia. However, Plaintiff alleges that was not allowed to congregate with other Rastafarians between August 1, 2014, and January 2015 and that he has not been allowed to congregate since February 2016 when Phase I was created in the VHU. He further asserts that he has not been provided religious service items needed for his religion.

Robinson enacted OP 864.1's prohibition on group religious services for Phase I inmates, like Plaintiff, in the VHU, and he issued the memorandum and policy that does not authorize any special holiday meals for Rastafarian holy days. The record is not yet developed as to the policy, practice, or custom that prohibited Rastafarian congregations between August 1, 2014, and January 2015 or relevant to the provisions of religious service items. See, e.g., Wall v. Wade, 741 F.3d 492, 499 n.11 (4th Cir. 2014) (recognizing a claim under either RLUIPA or the First Amendment requires showing a defendant's conscious or intentional interference with the plaintiff's religious rights); Lytle v. Griffith, 240 F.3d 404, 413 (4th Cir. 2001) (Wilkinson, J.,

---

[8] I assume for purposes of this opinion that Plaintiff's purported religious beliefs are personal practices that are both sincerely held and rooted in religious belief. See, e.g., Cutter, 544 U.S. at 725; see also 42 U.S.C. § 2000cc-5(7) (defining "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

13

dissenting) (recognizing a state official in an official capacity must have a special relationship to the challenged law for a plaintiff to overcome Eleventh Amendment immunity). Accordingly, Defendants' motion for summary judgment is denied in part as to the religion claims.

F.

Defendants' motion for summary judgment must be granted in part and denied in part for the equal protection claims. The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-41 (1985). It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks and citations omitted). Thus, to prove an equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of a plaintiff's membership in a protected class, such as race, gender, or religion. Id. (internal quotation marks omitted). A plaintiff must next show that the policy is not reasonably related to legitimate penological interests. Id. at 732. This element requires the inmate to "allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." Id. Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a particular concern. Morrison v. Garraghty, 239 F.3d 648, 654-55 (4th Cir. 2001).

The first of three equal protection claims concerns the disparity between conditions and programs afforded inmates in general population versus in the VHU. These two distinct groups

are not "similarly situated" for equal protection purposes. Inmates in general population conform their hair styles and length to policy. However, inmates in the VHU refuse to cut their hair, and thus, present an increased risk of security that requires different conditions, policies, and customs to ensure and maintain security. Consequently, this first equal protection claim fails.

Viewing the inferences in a light most favorable to Plaintiff, his second equal protection claim states a violation of clearly established law. Plaintiff alleges that inmates in the VHU who are from Virginia are afforded more educational or vocational programming whereas Plaintiff, because he is from the USVI, is not. The record does not yet reveal a rational basis, if any, for the alleged discriminatory programming in the VHU, and consequently, the record needs to be developed for this particular claim. However, Plaintiff fails to identify a defendant's personal act or omission responsible for the policy or practice benefitting Virginians but not Virgin Islanders. Accordingly, Defendants are entitled to qualified immunity in their individual capacities for this claim, but they must file another motion for summary judgment as to their official capacities. See, e.g., Lytle, 240 F.3d at 413.

Viewing the inferences in a light most favorable to Plaintiff, his third equal protection claim states a violation of clearly established law. Plaintiff alleges that the VDOC allows Muslim inmates to enjoy holiday meals and items, yet Rastafarian inmates are not afforded the same privileges. Robinson issued the memorandum and policy that does not authorize any special meal or item for Rastafarians yet authorizes meals and items for other religions. However, Plaintiff does not establish any other defendant's personal act or omission related to

this claim. Accordingly, all defendants except Robinson are entitled to qualified immunity and summary judgment for this claim.

### G.

Plaintiff seeks to hold Defendants liable because he does not believe the VDOC has honored the "prescreening criterion" ordered in Gartrell v. Ashcroft, 191 F. Supp. 2d 23, 32 (D.D.C. 2002). Gartrell held that the federal Bureau of Prisons must consider certain factors per the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, et seq., before housing federal inmates in VDOC facilities. Plaintiff is neither associated with the federal Bureau of Prisons nor proceeding under the Religious Freedom Restoration Act, and Plaintiff fails to establish that Gartrell applies here. Accordingly, Defendants are entitled to qualified immunity and summary judgment as to any claim arising from Plaintiff's desire to enforce the final judgment entered in Gartrell.

### IV.

For the foregoing reasons, I grant in part and deny in part Defendants' motion for summary judgment. Pursuant to Standing Order 2013-6, Defendants shall file a motion for summary judgment supported by affidavit(s) that addresses, inter alia, any state law claim including, but not limited to, the third party beneficiary doctrine.

ENTER: This 27th day of March, 2018.

Senior United States District Judge